# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 CR 200 - ALL | **DATE** | 9/5/2003 |
| **CASE TITLE** | United States of America vs. Troy Lawrence et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    The following motions are denied: [487-1], [477-1,2], [450-1], [447-1], [365-1], [364-1], [362-1], [326-1], [244-1], [449-1], [367-1], [351-], [241-], [449-1], [448-1] [446-1], [354-1], [238-1], [445-1], [240-1], [366-1], [369-1], [444-1], [361-1], [358-1], [355-1], [326-1], [320-1], [245-1], [507-1], [508-1], [268-1], [247-1], [248-1], [239-1], [442-1], [443-1], [502-1], [501-1], [419-1], [242-1], [472-1], [487-1], [477-1,2], [360-1,2], [356-1], [357-1], [358-1], [353-1], [352-1], [288-1], [363-1]. The following motion is granted in part and denied in part [243-1] (Stacia Smith). The following motion [364-1] is granted (Andre Lawrence).

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| ✓ | No notices required. Filed Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | SEP 09 2003 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 509 |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 03 SEP -8 PM 9:47 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 CR 200 |
| v. ) | |
| ) | Wayne R. Andersen |
| TROY LAWRENCE, et al., ) | District Judge |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on the numerous pre-trial motions filed by defendants in this case. For the following reasons, the motions are granted in part and denied in part.

I. Troy Lawrence's and Clarence Irons' Motions in Limine to
Preclude Introduction of Tape Recordings

Defendants Troy Lawrence and Clarence Irons have filed motions seeking to suppress the government from producing wiretap evidence in this case. For the following reasons, the motions are denied.

DOCKETED
SEP 0 9 2003

A. The Affidavits Contained Adequate Bases Regarding the Necessity
of the Wiretap

Defendants challenge the allegations of necessity contained in the supporting Title III affidavits in this case. Defendants argue that the affidavits state only "in conclusory form" that other investigatory techniques would not have succeeded. However, we find that the wiretap affidavits contain adequate bases regarding necessity.



The allegations in the original affidavit specified how the secretive and extensive nature of the Lawrence organization's alleged drug conspiracy rendered traditional law enforcement techniques unlikely to succeed and, in certain circumstances, too dangerous to attempt. The applications for extension and for interception of new telecommunication devices properly incorporated this necessity language and, when appropriate, expanded on the necessity showing. The affidavits set forth the role that cooperating individuals, informants and undercover agents played in the investigation–and the limitations on the use of such investigative techniques. Thus, the affidavits satisfied the requirement of the statute that the affidavits contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. 2518 (1)(c). Therefore, we deny the motions to suppress for this reason.

### B. Attorney-Client Communications

Defendants next argue that the administration of the wiretaps was flawed by the improper minimization of telephone calls between Lawrence and an attorney, Joseph Ettinger. We find this argument to be misguided for several reasons. First, the issue is irrelevant because the government does not intend to introduce any communications between Lawrence and Ettinger.

Second, the government's efforts to properly minimize conversations between Lawrence and Ettinger were reasonable in this case. The reviewing agents were instructed not to intercept privileged attorney-client communications. Moreover, the agents were instructed "[i]f at any time during the investigation it is determined that an attorney is participating in an intercepted conversation, do not summarize this conversation in the same log as the rest of the calls. Instead, you will summarize the conversation on a separate system, and immediately notify the

2

Supervising Agent. As soon as it is determined that an attorney is participating in an intercepted conversation involving <u>legal consultation of any kind or discussing legal strategy,</u> turn off the monitor and stop recording. All calls in which an attorney is participating will be reviewed by an attorney that is not participating in this investigation." In this case, it appears that these procedures were followed.

Third, Lawrence has not proven that all of the communications between himself and Ettinger are privileged. Even if he were to make such a showing, the calls may be subject to the crime-fraud exception. Moreover, even if we were to find that the communications are privileged and not subject to the crime-fraud exception, the remedy would be suppression of only the privileged calls. *See United States v. Abbit*, 1999 WL 1074015, at * 13 (D. Ore. September 24, 1999). As mentioned previously, the government does not intend to introduce any of the calls between Lawrence and Ettinger in its case in chief. However, if such evidence is offered during the trial, we will review our ruling at that time.

For these reasons, we deny Troy Lawrence's and Clarence Irons' motions in limine to preclude the introduction of any of the tape recordings obtained by the government as a result of the Title III wiretap orders.

II. <u>Defendant Stacia Smith's Motion For Severance</u>

Defendant Stacia Smith has filed a motion for severance. For the following reasons, this motions is denied.

Count One of the indictment alleges that twenty-five of the twenty-six defendants in this case, including defendant Smith, participated in a single conspiracy to possess with the intent to distribute and to distribute cocaine and cocaine base over a period beginning in approximately

1994 until March 5, 2002. The remaining counts of the indictment charge various defendants separately with substantive offenses that allegedly were committed in furtherance of the single conspiracy charged in Count One.

The indictment charges that since approximately 1994, Defendant Troy Lawrence has managed and controlled a street level crack cocaine distribution organization, operating out of public housing areas in Chicago Heights, Illinois. It is charged that members of the Lawrence organization distributed crack cocaine at the Claude Court public housing project seven days per week, twenty-four hours per day, selling approximately $ 10,000 to $ 20,000 per day. Lawrence allegedly divided each day into shifts and delegated different responsibilities to specific members of his organization. On each shift was a shift supervisor, a pack runner, security, and a person responsible for delivering crack cocaine to and picking money up from the operation at Claude Court. It is alleged that defendant Stacia Smith was a delivery person–delivering the cocaine to Claude Court and picking up the money during the previous shift, which was then delivered to Lawrence.

Defendant Smith argues that the case should be severed pursuant to Rule 14. Rule 14 authorizes a district court to grant a severance when it appears that a defendant is prejudiced by the joinder of defendants for trial. The Supreme Court has interpreted Rule 14 as requiring a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534 (1993). However, even if joinder may prejudice a defendant, Rule 14 does not mandate severance–it is within the district court's

discretion to determine the appropriate remedy. *Id.* at 538-39. A limiting instruction usually will "suffice to cure any risk of prejudice." *Id.* at 539.

Further, the court must balance the cost of conducting separate trials against the possible prejudice inherent in a joint trial. *United States v. Moya-Gomez*, 860 F.2d 706, 754 (7th Cir. 1988), *cert. denied sub nom., Estevez v. United States*, 492 U.S. 908 (1989). In instances in which defendants are charged with the same crimes, the Seventh Circuit has stated that the defendants should be tried jointly unless "there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about the guilt or innocence of one or more defendants." *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991). Moreover, "[i]n considering a motion for severance [under Rule 14], the trial judge should give deference to the 'strong public interest in having persons jointly indicted tried together.' " *United States v. Precival*, 756 F.2d 600, 610 (7th Cir. 1985).

The Seventh Circuit has identified several situations in which a severance under Rule 14 may be appropriate, including: 1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; 2) massive and complex evidence making it almost impossible for the jury to separate evidence as it is related to each defendant when determining each defendant's guilt or innocence (sometimes called "prejudicial spillover" evidence); 3) a co-defendant's statement inculpating the moving defendant; and 4) a gross disparity in the weight of the evidence against the defendants. *See, e.g., United States v. Stillo*, 57 F.3d 553, 557 (7th Cir.), *cert. denied*, 516 U.S. 945 (1995).

In her motion in this case, defendant Smith, in a non-specific and sweeping fashion, argue that severance is appropriate mainly because of the general "spillover" effect of the evidence. Defendant's assertion fails to provide this Court with a sufficient basis for severance in this case.

In this case, all defendants are charged in the single conspiracy count. With the exception of post-arrest statements, the vast majority of the evidence may be admissible against all of the defendants–even evidence relating to the individual counts in the indictment in which a particular defendant is not named because such evidence shows the existence of the conspiracy. Thus, there is no spillover effect because there may be no spillover–all of the defendants are charged in the conspiracy.

Furthermore, in order to succeed on a claim of "prejudicial spillover," a defendant "must overcome the dual presumptions that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately." *United States v. Turner*, 93 F.3d 276, 284 (7th Cir.), *cert. denied*, 117 S. Ct. 596 (1996). Proper limiting instructions are "an adequate safeguard against the risk of prejudice in the form of jury confusion, evidentiary spillover and accumulation of evidence." *United States v. Pulido*, 69 F.3d 192, 208 (7th Cir. 1995). Defendant has not overcome these presumptions in this case. In fact, defendant has not provided any basis for why a jury in this case, as opposed to juries in other multi-defendant cases, would be unable to perform its duty as fact finder as to each defendant.

While the alleged risk of juror confusion and spillover is very small, the benefits of a joint trial are huge. Each of the defendants is charged in a single conspiracy relating to a single drug operation. A trial against any one defendant will require that the government prove the entire scope of the conspiracy charged in Count One. Thus, if severed, the same evidence will be

presented multiple times. Each time, the government will be required to prove the existence of the conspiracy and the manner in which the drug spot was operated, including the roles of each of the members of the conspiracy. This will result in a great duplication of effort and waste of judicial resources and will cause inconvenience for many more members of the community through jury service.

For these reasons, Defendant Stacia Smith's motion for severance is denied.

III. <u>Troy Lawrence's Motion to Dismiss Count One of the Indictment</u>

Defendant Troy Lawrence has filed a motion to dismiss Count One of the indictment. For the following reasons, the motion is denied.

Defendant Lawrence argues that under *Appendi v. New Jersey*, 530 U.S. 466 (2000), drug quantity is an element of the offense in prosecutions involving 21 U.S.C. § 846, conspiracy to distribute illegal drugs. Lawrence argues that because Count One of the government's indictment alleges that Lawrence, along with his co-conspirators, conspired to distribute cocaine powder "in excess of 5 kilograms" and cocaine base "in excess of 50 grams," Count One fails to state an element of the offense of drug conspiracy and must, therefore, be dismissed.

Defendant misapprehends *Appendi*. Defendant fails to cite any Seventh Circuit precedent in support of his interpretation of *Appendi*. The Seventh Circuit has consistently held that drug quantity is not an element of the offense proscribed under 21 U.S.C. § 846. *United States v. Trennell*, 290 F.3d 881, 887 (7th Cir. 2002); *United States v. Bjorkman*, 270 F.3d 482, 490-491 (7th Cir. 2001); *United States v. Brough*, 243 F.3d 1078, 1080 (7th Cir. 2001). Accordingly, the government need only allege, and the jury need only find, quantities of drugs sold incident to the conspiracy within the ranges of drug quantities specified under the sentencing provisions of 21

U.S.C. § 841 and 21 U.S.C. § 846. *See United States v. Smith*, 308 F.3d 726, 740-741 (7th Cir. 2002) (holding that the district court was not required to ask the jury to return a specific finding of drug amount when the jury found that the defendant had conspired to possess with intent to distribute more than 50 kilograms of marijuana, but less than 100 kilograms of marijuana). Here, the government's indictment specifies two of the drug quantity ranges stipulated under 21 U.S.C. § 841(b)(1).

For these reasons, Troy Lawrence's motion to dismiss Count One of the indictment is denied.

## IV. Troy Lawrence's Motion To Strike Surplusage

Defendant Lawrence has filed two motions seeking to strike surplusage from the indictment. Specifically, Lawrence seeks to strike the term "crack cocaine" and "all of the language of Count One not required by Title 21, United States Code, Section 846" from the indictment. "Motions to strike surplusage under Fed.R.Crim.P. 7(d) are granted only if 'the targeted allegations are <u>clearly not</u> relevant to the charge <u>and</u> are inflammatory and prejudicial.'" *United States v. Busch*, 1992 WL 176491, * 1 (N.D. Ill. 1992).

We find that there is nothing improper, inflammatory, or superfluous in the language used in the indictment. The challenged language of the indictment is relevant to define the means and methods by which the charged conspiracy was carried out and is neither inflammatory nor prejudicial. To prove these charges, the government is entitled to present evidence identifying the conspiracy and the nature of its activities, as well as the role each defendant played within the conspiracy. Presumably, the government will introduce evidence at trial that cocaine base is

commonly referred to as "crack" cocaine. We do not find that term to be inflammatory or to be superfluous.

For these reasons, Lawrence's motions to strike surplusage are denied.

V. <u>Andre Lawrence's Motion For Discovery And Inspection</u>

Defendant Andre Lawrence has filed a motion seeking a host of discovery materials. Based upon the representations of the government in open court, the government has complied with its discovery obligations under Fed.R.Crim.P. 16.

To the extent that Lawrence's motion seeks to inspect physical evidence, the government has represented that all physical items to be introduced by the government will be cataloged in advance of the trial and will be available for inspection by the defendants prior to trial. We will address specific objections regarding the physical items on an ad hoc basis as the trial proceeds.

VI. <u>Clarence Irons' Motions For Sanctions</u>

Defendant Clarence Irons requests that this Court bar the government's use of videotapes, obtained pursuant to orders of the Chief Judge, of activity taking place in the area of Claude Court in Chicago Heights-- the area allegedly controlled by co-defendant Troy Lawrence's drug operation. Defendant Irons claims that the government violated Federal Rule of Criminal Procedure 16 by not providing each defendant with a copy of these videotapes with the government's initial discovery in this case.

We deny the motion for sanctions. The government complied with Rule 16 by informing defense counsel that all "Documents and Objects" in the government's possession were available for review upon request. Moreover, the existence of these videotapes was not a secret.

On several occasions throughout the underlying investigation of this case, then Chief Judge Aspen authorized the government to install and use two video surveillance cameras in the vicinity of Claude Court and 5th Avenue, Chicago Heights, Illinois, and the public way surrounding that location (commonly referred to as "pole-cams"), resulting in the recording of approximately 46 videotapes. On March 4, 2002, the government filed a nearly 200 page complaint charging 20 of the 26 defendants in this case with conspiring to violate the drug laws. Various of these videotapes were mentioned in at least two paragraphs within the complaint.

On July 16, 2002, a grand jury returned a 400-count indictment, charging the 26 defendants in this case with various drug trafficking violations. Pursuant to this Court's Rule 16 disclosure schedule, the government made its initial disclosures on August 8, 2002. The government stated in its letter that, "All original documents and tangible objects currently possessed by the government are available for your inspection by contacting either Reid Schar or [Bart Huff]." Enclosed with that letter, the government produced, among other things, copies of each of the Chief Judge's order's authorizing the installation and use of the pole-cams. It was not until February 3, 2003, that any defendant requested to inspect the documents and other objects in the government's possession. Thereafter, after discussing the matter on the record with defense counsel and this Court, the government made such evidence available on three days, April 10, April 17, and April 24. It was not until this time that any defendant requested copies of the videotapes resulting from the pole-cams, which the government subsequently provided to defense counsel.

Rule 16 specifies the parties' discovery obligations. The videotapes that are the subject of Irons' motion are governed by Rule 16(a)(1)(E), which subsection is entitled "Documents and

Objects," and states, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places . . .." The government complied with Rule 16(a)(1)(E) by notifying defense counsel, on August 8, 2002, that all evidence in its possession (which included the videotapes) was available for inspection. The existence of the videotapes was no secret, as they were discussed in the complaint affidavit, and the applications for the authorization to install the video camera were produced on August 8, 2002. Most significantly, no counsel requested to review any of the evidence in this case until February 3, 2003, six months after the government made the materials available. After defense counsel requested an opportunity to review the evidence, as promised, the government made provisions for such review and subsequently provided a copy of the videotapes to the defendants.

For these reasons, we find that defense counsel had notice of the videotapes and the opportunity to review them beginning on August 8, 2002. Thus, we deny Irons' motions for sanctions.

VII. Stacia Smith's, Kent Clark's, Nyroby Seymour's Andre Lawrence's and Troy Lawrence's *Brady, Giglio*, and Rule 404(b) Motions

Defendants Stacia Smith, Nyroby Seymour, Andre Lawrence and Troy Lawrence have filed motions seeking disclosure of *Brady* and *Giglio* material. In addition, Troy Lawrence and Stacia Smith have filed motions for an order requiring the government to produce all Rule 404(b) materials.

Based on the government representations that it has turned over to the defendants all *Brady, Giglio* and Rule 404(b) materials, these motions are denied as moot.

11

VIII. <u>Andre Lawrence's Motion To Disclose Identity Of Informants</u>

Andre Lawrence has filed a motion seeking the identity of the government's informants. We deny this motion. The government has provided the names and statements of all witnesses, including informants, it intends to call at trial. Defendant has made no showing justifying any further discovery as to informants generally.

The Seventh Circuit has held that a defendant must "establish a genuine need for disclosure before disclosure should be ordered." *United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985). When an informant is a mere "tipster" rather than a participant or eyewitness to the event in question, disclosure is not required. *Id.*

In this case, Defendant has not demonstrated the need for the disclosure he seeks, and he has not supported his motion with the requisite factual assertions. Therefore, Andre Lawrence's motion to disclose the identity of the informants is denied.

IX. <u>Stacia Smith's and Nyroby Seymour's Motions Regarding Expert Testimony</u>

Defendants have moved to seek notice of the government's intention to use expert testimony. We deny the motions as moot because the government has represented that it gave defendants a list of expert witnesses which it intends to call at trial. However, this ruling is not intended to prevent defendants from objecting to the admissibility of the testimony of any alleged expert at trial.

X. <u>Stacia Smith's Motion For Disclosure Of Electronic Surveillance</u>

Stacia Smith has moved that the government be required to report the use of electronic or other surveillance or recording devices. The government has disclosed all Title III wiretaps and supporting applications and orders in this case. Additionally, the government has provided full

12

access to law enforcement logs, progress reports, and other documentation maintained during the existence of the wiretaps. Defendant has offered no statutory or case authority for disclosure beyond the disclosure already tendered. Therefore, the motion is denied.

XI. Stacia Smith's, Clarence Irons', Andre Lawrence's, and Nyroby Seymour's Motions For A Bill Of Particulars

Defendants' motions ask this Court to order the government to explain to them, in detail, exactly which documents and reports incriminate them, and which phone calls will be used against them.

"The test for whether a bill of particulars is necessary is 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.'" *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). "[A]n indictment for conspiracy under 21 U.S.C. §§ 841(a) and 846 need only allege the conspiracy to distribute drugs, the time frame in which it allegedly was operated, and the statute violated." *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991).

In this case, as Count One of the indictment makes clear, the Defendants are charged with conspiring to violate 21 U.S.C. § 841(a) and 21 U.S.C. § 846. The indictment specifically alleges that the Defendants conspired to distribute cocaine and cocaine base. Count One charges the hierarchy of the conspiracy as well as the alleged duties and responsibilities of members of the conspiracy. The indictment also specifies the time frame and location of the alleged conspiracy. Each of the defendants' roles in the alleged conspiracy is specifically detailed. Thus, since a § 846 indictment need not allege overt acts, but need merely allege a conspiracy to distribute drugs, the time frame in which the conspiracy allegedly was operated, and the statute

violated, the indictment in this case seems sufficiently detailed. Therefore, a bill of particulars is unwarranted, and Defendants' motions are denied.

XII. <u>Andre Lawrence's and Troy Lawrence's Santiago Motions</u>

Andre Lawrence and Troy Lawrence have moved for a hearing on the admissibility of co-conspirator statements in advance of trial. However, the government has filed a written Santiago proffer setting forth the basis for admissibility of co-conspirator statements. Therefore, we find that a hearing is unnecessary, and we deny Defendants' motions. However, this ruling is not meant to prohibit any Defendant from objecting to the admissibility of co-conspirator statements during the trial itself.

XIII. Andre Lawrence's and Stacia Smith's Motions For Early Disclosure of Jencks Act Material

Andre Lawrence and Stacia Smith have moved for an early disclosure of Jencks Act materials. However, because the government has represented that it has already turned over all Jencks Act materials to the Defendants, these motions are denied as moot.

XVI.. Andre Lawrence's and Stacia Smith's Motions For Production Of Cooperation Agreements

Defendants Andre Lawrence and Stacia Smith have filed motions to require the government to reveal the agreements entered into between the government and the prosecution witnesses. We grant these motions and order the government to advise the Defendants of the nature of the agreements between the government and the prosecution witnesses so that at trial, the defense attorneys can effectively cross-examine the witnesses regarding the agreements.

XV. <u>Motions For Disclosure Of Witness Lists</u>

Several Defendants have moved for the government to produce its list of all witnesses it intends to call at trial. Based on the government's representation that it has turned over its witness list to the Defendants, these motions are denied as moot.

XVI. <u>Motions To Adopt</u>

Insofar as certain Defendants have moved to adopt the motions filed by other Defendants, this Opinion is meant to address all outstanding motions filed, or adopted by, all Defendants.

## CONCLUSION

For the foregoing reasons, we grant the motions of Stacia Smith and Andre Lawrence for the production of cooperation agreements. All other motions of the Defendants are denied.

It is so ordered.

                                    Wayne R. Andersen
                                    United States District Judge

Dated: September 5, 2003