IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02 CR 200 |
| v. | ) | |
| | ) | Judge Wayne R. Andersen |
| TROY LAWRENCE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Troy Lawrence's Motion to Suppress Title III Recordings and Motion Regarding Jurisdiction. For the following reasons, the motions are denied.

## BACKGROUND

On December 18, 2003, after a three and a half month jury trial, Defendant Troy Lawrence was found guilty on sixteen counts of a drug conspiracy indictment and related charges. Mr. Lawrence currently is awaiting sentencing and has filed two motions which are now before the Court. We will address each of these motions in turn.

### I. Motion To Suppress Title III Recordings

A. Background

During the course of the investigation that led to the current indictment, pursuant to 18 U.S.C. § § 2510 *et seq.*, the Drug Enforcement Administration (DEA) intercepted wire communications over defendants Troy Lawrence's and Levert Griffin's cellular phones for a total of three thirty-day periods from November 2001 to February 2002. Specifically, from November 2, 2001 through January 2, 2002, the DEA intercepted conversations concerning the

conspiracy on a cellular phone used by Levert Griffin and from January 7, 2002 through February 5, 2002, the DEA intercepted conversations concerning the conspiracy on a cellular phone used by Troy Lawrence. During the wiretaps, thousands of calls were intercepted between Lawrence and Griffin and various individuals, including many pertinent calls with their co-defendants discussing all aspects of the drug-trafficking operation and other aspects of the conspiracy.

The computer system used by the DEA's Chicago office to intercept wire communications is manufactured by Verint Systems, Inc. and is designed to handle the interceptions of numerous phone lines at the same time. When a call first enters the system from the service provider, the audio portion of the call is first directed to a hard drive that acts as a buffer, or temporary holding site, for the audio portion of the call. The hard drive acts as the buffer for all of the intercepted phone lines that are ongoing in the DEA's Chicago office. The audio is then automatically written from the buffer to a MO disk that is given the label "master." The audio portion of the call is also automatically written to at least one other MO disk that is labeled "duplicate," though it contains the same data as the "master" and is otherwise indistinguishable from the "master." When the audio portion of the call is directed to the hard drive buffer and to the MO disk, the interception system encodes the audio pursuant to proprietary encoding methods maintained by Verint. The encoding methods both lock the audio itself as well as spreads the audio onto segments all over the MO disk such that the decoding formula owned by Verint must be used to put the audio back together into a coherent, understandable communication.

In addition, as the audio portion of the call is being received by the hard drive, the interception system also generates session data for the call comprised of a session number, date, start time, and at the end of the call, an end time and call duration. The session data is first stored on a hard drive separate from the audio portion. The system then writes the session data, along with the audio portion, to the MO disk.

On October 29, 2003, the government moved to unseal the previously sealed MO disks containing the recordings that were the subject of defendant's motion in order to compare the sealed disks to the duplicate originals of the disks and, on October 30, 2003, this Court granted the government's motion to re-seal the disks after the comparisons were made and showed that the previously-sealed disks had the same data as the duplicate originals.

Troy Lawrence has filed a motion seeking to suppress the Title III recordings on the grounds that the government did not present to the Court for sealing the hard drives of the computer equipment used in conducting the intercepts, but rather presented for sealing the magneto optical disks ("MO disks"), which were prepared from information gathered in the first instance on the hard drive.

Mr. Lawrence argues that the government was under an obligation to seal the "original"recording of the intercepted calls and that the government failed to do so because it sealed MO disks rather than the hard drive that is part of the computer system that accomplishes the interception. For the reasons detailed below, Mr. Lawrence's argument is without merit because there is no statutory obligation to seal the "original" recording of intercepted calls; rather, the MO disk is the "device" onto which the recordings are made, and it is only the recordings on the "device" that must be sealed. 18 U.S.C. §2158 (8)(a). Moreover, sealing the

3

hard drive is impractical and senseless given the way in which the computer system conducts the interception.

B. Discussion

The primary purpose of §2158 (8)(a) "is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *United States v. Ojeda-Rios*, 495 U.S. 257, 263 (1990). The statute does not require the sealing of an "original" recording. Rather, with regard to recordings, the statute requires that the intercepted communications be: (1) recorded on tape or wire or "other comparable device"; and (2) recorded "in such a way as will protect the recording from editing or other alterations."

As applied to the technology used by the DEA, the MO disk meets those requirements: (1) it is a "comparable device" on which the communications are recorded; and (2) the calls are recorded in a way that protects against editing and alteration. The MO disk is the first single storage "device" that contains all of the information necessary to play the intercepted communications. The hard drive buffer containing the audio portion of the call has neither the session data (to identify the call) nor the data necessary de-code the audio of the call and reassociate the separate portions of the call, both of which initially are stored on a separate hard drive. In other words, the MO disk is the first single device from which a comprehensible call can be played.

With regard to the second feature of recordings to be sealed, the calls on the MO disk are protected against editing and alteration. Only the Verint system can read (de-code) the MO disk. There is no editing or alteration function in the system. Moreover, access to the system itself is

4

limited both physically (the rooms in which the system is located have restricted access) and through the use of password protection on the system.

In sum, we find that the statute does not require the sealing of an "original," but rather that the statute requires that the government seal a "device" "so as to ensure an inability to manipulate or edit or change what has been captured." We find that the government's sealing of the MO disk in this case ensures the reliability and integrity of the evidence.

For these reasons, Troy Lawrence's motion to suppress the Title III recordings are denied.

## II. Motion Regarding Jurisdiction

Troy Lawrence next argues that his conviction is invalid because the statute relied upon for subject-matter jurisdiction, 18 U.S.C. § 3231, never passed both houses of Congress in 1948 and is thus void. Mr. Lawrence argues that, because of a defect in the 1948 passage of Public Law No. 80-772, § 3231 as well as all subsequently enacted statutes which rely on § 3231 for district court jurisdiction are similarly invalid.

We find that this Court does have jurisdiction over Mr. Lawrence pursuant to 18 U.S.C. § 3231. The 1948 amendment to that statute passed both houses of Congress and was signed into law by President Truman on June 25, 1948. Therefore, the amendments and statutes relied upon for jurisdiction in this case were properly enacted and are binding. Mr. Lawrence has offered no legitimate evidence or case law to the contrary. Of course, even if the 1948 amendment to § 3231 were somehow questionable, this Court would retain jurisdiction over this case because the predecessor statute to § 3231, to which Mr. Lawrence offers no challenge, provides for such jurisdiction as well.

For these reasons, Mr. Lawrence's Motion Regarding Jurisdiction is denied.

## **CONCLUSION**

For the foregoing reasons, Troy Lawrence's Motion to Suppress the Title III Recordings and Motion Regarding Jurisdiction are denied.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: January 27, 2006