**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **No. 02 CR 200-1** |
| | ) | |
| v. | ) | **Hon. Rebecca R. Pallmeyer** |
| | ) | |
| **TROY LAWRENCE** | ) | |

## TROY LAWRENCE'S MOTION TO REDUCE HIS LIFE SENTENCE PURSUANT TO SECTIONS 404 AND 603 OF THE FIRST STEP ACT

> *I am writing this letter of recommendation on behalf of Troy [Lawrence] . . . I know Troy to be a mature, middle aged man who has lived according to the institution rules for a long time. Mr. Lawrence is a positive force . . . mentoring younger prisoners, and being a model of consistence by receiving his GED, taking college courses, and participating in many vocational programs. Troy has also proved to be a hard and reliable worker as an Orderly . . . I am confident . . . Troy Lawrence would quickly become a productive member of society. He has served a sufficiently long sentence . . . and deserves the chance to re-unite with his family.*

> --E.A. Earwin, (Former) Associate Warden at Florence Penitentiary

Defendant TROY LAWRENCE's road to a mandatory life sentence began when he was just 17 years old. On three occasions when Lawrence was a juvenile, Chicago Heights police arrested him for selling $10 "dime" bags of cocaine; he pled guilty and was sent to bootcamp for young offenders. A decade later in 2003, Troy Lawrence was federally indicted in a drug conspiracy. The federal prosecutor filed a 851 Enhancement, maintaining Troy's chronologically and qualitatively minor drug priors required him to forfeit the entire balance of his life's freedom. The government's 851 Enhancement left presiding Judge Wayne

Anderson no choice but to impose a "profoundly sad" sentence of life imprisonment. The Court lamented:

> [M]aybe there is a day in the future when, because of the social problems that led to some of this, Congress will change the law and liberate lots of people who were incarcerated during a time when Congress chose to pass laws that take people out of society when they have committed certain deeds.

Sent. Tr. 33.

America's crack laws have changed significantly during Lawrence's 18 years of incarceration. Most recently, Section 404 of the First Step Act of 2018 authorized district courts to reduce crack sentences when the statutory penalty provisions of the Fair Sentencing Act (FSA) would have applied had the FSA been in effect at the time of the original sentencing.

Just as our drug policies have evolved over the years, so too has Troy Lawrence. He has come a long way from the kid selling $10 dime bags. And he has come a long way from the man who led a drug ring in Chicago Heights. According to former Associate Warden of USP Florence, Lawrence is a "positive force" who "deserves the chance to reunite with his family."[1]

For these reasons, and as further explained below, DEFENDANT TROY LAWRENCE, by his counsel MIANGEL CODY and TALISHA GRIFFIN, respectfully moves the Court to reduce his life sentence to 120 months on Counts 1, 17, 24, 35, 37, and 38, pursuant to Section 404(b) of the First Step Act. As to Count 25 (vicarious firearm possession), Mr. Lawrence further moves the Court to reduce his 300-month sentence to 60-months consecutive, pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by § 603 of the First

---

[1]     Letter from Associate Warden Earwin, dated July 22, 2016, attached as Exhibit A.

Step Act. He understands that his 60-month sentence on Count 18 will remain consecutively stacked. A total sentence of 20 years imprisonment is sufficient, but not greater than necessary for this particular defendant, on these particular facts, in this particular case.

# I. THE FACTS

## A. Low-Hanging Fruit: Troy Lawrence's 1993 Teen Drug Convictions

Troy Lawrence grew up in a muted, grey environment of concrete and despair in Chicago Heights, Illinois. In the south suburban Chicago community, reputed as one of the poorest in the country, Lawrence lived in a pervasive fog of poverty where not much beyond arm's reach could be seen or attained.[2] At 17, Lawrence dropped out of high school after completing his junior year. For Chicago Heights police, young Troy Lawrence was low-hanging fruit. In the fall of 1992, 17-year-old Lawrence was repeatedly arrested by the same two local police officers: Anthony Bartolomei and David Basile.[3] On October 7, 1992, after observing Troy "toss an object to the ground," Officers Bartolomei and Basile reportedly found him with small baggies containing fewer than 15 grams of powder cocaine. A subsequent state plea transcript states:[4]

---

[2]      Dominic Candeloro & Barbara Paul, CHICAGO HEIGHTS: AT THE CROSS ROADS OF THE NATION 140-41 (2004) (Among steep industrial decline, commercial collapse, "white flight," and increasing unemployment rates among the East Side's African American population, Chicago Heights "presented the image of a classic urban ghetto." Even more troubling is that "[at] a time when the city was facing the most difficult problems in its history, its leaders were extorting bribes for contracts . . . and protection money from drug dealers.")

[3]      Cook County State's Attorney Notice of Plea, dated Sept. 9, 1993. State court documents pertaining to Lawrence's predicates will be attached as Exhibit B to this Motion.

[4]      Transcript of Change of Plea Hearing at 10, *People v. Lawrence*, Nos. 92 C6 61535-02, 93 CR 03918-01, 93 C6 60073-01 (Cook Cty. Cir. Ct. Sept. 7, 1993).

> area. The officers went to that location, pulled up near the curb
> of that address and observed the person they would identify in
> court as the defendant who stands before you, Troy Lawrence, toss
> an object to the ground.
>
> The officers would testify they recovered that and
> found it to be a plastic bag which contained nine small zip-lock
> bags, each of which contained a white substance. The officers

One month later in November 1992, the same two police officers Bartolomei and Basile set up Lawrence, who sold officers a $10 baggie of cocaine.[5] The state court plea transcript states:

> MR. KULLING: On case number 92 C6 61535 the State
> would also call Detective Bartomolie and Detective Basile. They
> would testify on November 18th, 1992, at the vicinity of 1425
> Fifth Avenue in Chicago Heights, the officers set up a controlled
> buy in that area, at which time they observed two subjects;
> subjects who approached them, and they would identify as the
> Defendant, Troy Lawrence. He spoke with the co-subject, at which
> time the co-subject said to Troy Lawrence, "Go and sell this."
>
> Troy Lawrence then approached the undercover officers
> and exchanged with the officers one blue tinted zip-lock bag which
> contained an off-white substance. The officers tendered ten
> dollars U.S.C.

While conducting "surveillance" in December 1992, officers Bartolomei and Basile *again* arrested 17-year-old Lawrence for "placing something in an overhan[g] of the porch," which records indicate was a raisin-sized $10 bag of cocaine.[6]

---

[5]     *Id.* at 11.
[6]     *Id.* at 12.

> MR. KULLING: Judge, under Case Number 93 C6 60073 the
> State would also call Detective Bartomolie and Detective Basile
> from the Chicago Heights Police Department. They would testify
> on December 22nd, 1992, at 1433 Fifth Avenue, the officers set up
> surveillance. At that time they observed a subject who they would
> identify as the Defendant, Troy Lawrence, on the porch placing
> something in an overhand of the porch.
>
> As the officers approached the defendant fled. He was
> later caught. The officers would testify that they recovered what
> they observed the defendant place in that overhand and it was
> found to contain five blue tint zip-lock bags, all containing an off-
> white substance.

A teenaged Lawrence pled guilty to all three $10 drug offenses on the same day in September 1993. Lawrence was sentenced to four years in the state department of corrections, he was released after completing 120 days in boot camp.[7]

**B.** **Above the Law: The Proliferation of Chicago Heights Police Corruption in the 1990s.**

In the early 1990s, the only thing more potent than the poverty in Chicago Heights was its corrupt police force. The same year that Chicago Heights officers arrested 17-year-old Troy Lawrence for selling cocaine dime bags in a police-orchestrated sting, that same police force accepted tens of thousands of dollars of bribe money to protect its local drug kingpins. Indeed, while a teen Troy Lawrence sat in state custody for selling $30 worth of cocaine, *five* Chicago Heights police officers were convicted of drug conspiracy, money laundering, and fabricating

---

[7] *Id.* at 15-16. In 2019, Lawrence was selected to be featured in a national public education campaign about the federal Three Strikes Drug Law. The Court can listen to a recording of Mr. Lawrence telling his story on the project's website here: https://www.thirdstrikecampaign.com/home/troy-lawrence

evidence.[8] Some officers even admitted that they faked $10 drug stings and planted evidence to bolster arrests. For instance, in scenarios strikingly similar to Troy Lawrence's juvenile dime bag arrests, Chicago Heights police sergeant Allen Vehrs and officer Rick Coulom admitted fabricating evidence that they had bought $10 in cocaine to justify an arrest.[9] Sergeant Vehrs, who was federally prosecuted, admitted that he planted a dimebag of cocaine on a suspect and was sentenced to a year and a day in federal prison.[10] In the same federal case, Officer Coulom was sentenced to just two years' probation. A third officer, James Zerante, also admitted fabricating drug evidence and was sentenced to 6 months' probation.[11]

In a separate 1993 federal corruption case, Chicago Heights officers George Werner and George Sintic were convicted of money laundering and drug conspiracy.[12] Federal prosecutors proved the officers were involved in a multi-decade conspiracy that began in the late 1970s when they provided information to a drug dealer about the activities of police and competing drug dealers. The officers also bought cocaine from a drug kingpin and sold it to a drug dealer in Chicago Heights.[13]

Chicago Heights police corruption infected the highest ranks of the force. Deputy Chief Sam Mangialardi landed in his own federal drug and corruption case in 1993.[14] Chief

---

[8]     Mary Sue Penn, 5677 *2 Suburb Cops Guilty in Drug Conspiracy*, CHICAGO TRIBUNE, Aug. 4, 1992, *available at* http://articles.chicagotribune.com/1992-08-04/news/9203100074_1_drug-conspiracy-fred-foreman-trafficker.

[9]     Matt O'Connor, *2nd Officer Admits Case Was Bogus*, Chicago Tribune, May 10, 1993, *available at* http://articles.chicagotribune.com/1993-03-10/news/9303190786_1_drug-house-cocaine-narcotics.

[10]    *Id.; see also United States v. Vehrs*, No. 93 CR 20 (N.D. Ill.)

[11]    *United States v. Vehrs*, No. 93 CR 20 (N.D. Ill.) (Chicago Heights police officer prosecution).

[12]    Penn, *supra* note 8; O'Connor, *supra* note 9; *see also United States v. Werner*, No. 92-cr-00128 (N.D. Ill.).

[13]    *Id.*

[14]    *See McCann v. Mangialardi*, 337 F.3d 782, 783 (7th Cir. 2003).

Mangialardi corruptly accepted $10,000 *per month* from reputed drug kingpin Otis Moore to divert police away from Moore's drug empire and to harass investigating federal agents.[15] That drug kingpin, Otis Moore, eventually committed suicide by shooting himself in the head on the front steps of the Chicago Heights Police department. Moore, who'd begun cooperating with federal authorities, was wearing a federal wire that recorded his death. For his part, Chief Mangialardi was found guilty of racketeering, extortion and narcotics conspiracy and sentenced to 10 years in prison; he was released from prison in 2003.[16]

Chicago Heights police officer David Basile, who repeatedly arrested young Lawrence, was eventually promoted to sergeant where he led the department's narcotics unit. Basile built his career entrapping minor(ity) drug offenders with, quite literally, macadamia nuts, oregano, and basil. In a 2003 news report, Sergeant Basile bragged that his officers entrap addicts into the costly criminal justice system, using nothing more than nuts and ordinary food seasonings packaged to look like narcotics:

> *Early Thursday afternoon, four Chicago Heights police officers opened a jar of macadamia nuts and an assortment of Italian spices and poured them onto tables. . . . When chipped into rock-size balls, the macadamia nuts are the spitting image of crack cocaine. A mix of oregano, sage, parsley and rosemary resembles marijuana. Carrying tiny plastic bags of each would-be substance, undercover sheriff's officers posed as drug dealers Thursday at 15th Street and Fifth Avenue. Within minutes, three people were arrested. Each paid*

---

[15]     Deborah Horan & Todd Lighty, *Ex-Drug Dealer Worked for FBI on Night He Died*, Chicago Tribune, June 13, 2003, *available at* http://articles.chicagotribune.com/2003-06-13/news/0306130140_1_fbi-agents-police-officers-corrupt-cops.

[16]     Also in 1993, the mayor of Chicago Heights and two city council members were federally convicted of racketeering, extortion, and bribery. Chicago Heights mayor Charles Panici received more than $600,000 in kickbacks. *See United States v. Marshall*, 75 F.3d 1097, 1103 (7th Cir. 1996).

> *$10 to $20 for bags of macadamia nuts they believed were crack, Basile said.*[17]

Sergeant Basile acknowledged his macadamia-nut ruse wholly fails to reduce drug crime along the Chicago Heights Fifth Avenue corridor, admitting "it will only keep the streets on the city's depressed East Side quiet for a few days."[18] Instead, Sergeant Basile's trap rather effectively kept poor people precisely that: Poor. The average penalty for entrapped addicts is approximately $1,000 in fines and court costs. No substance abuse treatment is offered. Sergeant Basile bragged: "We have a lot of return customers. We have arrested the same people in back-to-back weeks."[19]

### C. A "Profoundly Sad Thing": The Federal Prosecution & Sentencing of Troy Lawrence

On July 16, 2002, Mr. Lawrence was charged in a multi-count Indictment that alleged various violations of federal drug laws and related offenses.[20] For purposes of this motion, Mr. Lawrence moves to reduce his life sentence on the following counts:

- Count One: Conspiracy to distribute a controlled substance including 5 kilograms or more of mixtures and substances containing cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2;

- Count Seventeen: Possession with intent to distribute 10.9 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2;

- Count Twenty-Four: Possession with intent to distribute 227 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2;

---

[17] Phil Rockrohr, Chicago Heights, Cook County Police Conduct Drug Sting, Northwest Indiana Times, July 18, 2003, *available at* https://www.nwitimes.com/news/local/chicago-heights-cook-county-police-conduct-drug-sting/article_d8bebea9-c360-5cf7-9a02-1d788318b880.html

[18] *Id.*

[19] *Id.*

[20] A table that details Troy's charges and the sentences imposed for each count is attached as Exhibit C.

- <u>Count Thirty-Five</u>: Possession with intent to distribute 4446 grams of cocaine, in violation of 21 U.S.C § 841(a)(1), and 18 U.S.C. § 2;

- <u>Count Thirty-Seven</u>: Possession with intent to distribute 496.4 grams of mixtures and substances containing cocaine, in violation of 21 U.S.C. 841 § (a)(1), and 18 U.S.C. § 2;

- <u>Count Thirty-Eight</u>: Possession with intent to distribute 324.2 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2.

*United States v. Lawrence, et al.*, 2 CR 200-1, Indictment (Doc. No. 172).

On June 25, 2003, the Government filed notice that it would seek statutory enhanced penalties pursuant to 21 U.S.C. § 851 on Counts 1, 17, 24, 35, 37, and 38, if Lawrence proceeded to trial and was found guilty. (Doc. No. 467). On December 18, 2003, a jury found Lawrence guilty.

> *In my gut, in my heart, the—the decision in my mind was, 'Should Troy Lawrence be sentenced to life or should he receive some lesser sentence[?]' . . . But the debate in my mind as a trial judge had to end when I thought— when I realized that the [851] statute didn't give me any choice[.]*

–Judge Wayne R. Andersen

Two people were handcuffed in the courtroom at Troy Lawrence's 2006 sentencing: Mr. Lawrence and the sentencing judge. Per the PSR, Lawrence's criminal history was minimal:

### Criminal History of Troy Lawrence

| Offense | Age | Sentence |
| --- | --- | --- |
| Possession of 30 grams of cocaine | 13 | 6 months of probation |
| Possession of 15 grams cocaine | 17 | 3 years IDOC suspended; served 120 days bootcamp |
| Delivery of a 1 gram of cocaine | 17 | 4 years IDOC suspended; served 120 days bootcamp |

| Possession with intent to deliver less than 1 gram of cocaine | 17 | 4 years IDOC suspended; served 120 days bootcamp |
|---|---|---|
| Driving on a suspended license | 20 | Supervision |
| Driving on a suspended license | 21 | Supervision |
| Driving on a suspended license | 21 | Supervision |

PSR at 12-15

Troy Lawrence's only adult convictions were traffic violations and his drug predicates occurred when he was a juvenile and involved minimal drug quantities. Yet, Lawrence faced the most severe recidivist drug penalty when he stood before Judge Anderson for sentencing. The government's 851 Enhancement meant the Court was required to impose a mandatory life sentence. Judge Anderson reiterated several times throughout the hearing that his discretion in sentencing was being "driven" by statute, specifically by 21 U.S.C. § 851. Sent. Tr. 33. Understanding it would not change anything, Judge Anderson stated that, if given the discretion, he would not have sentenced Troy Lawrence to life. Instead,

> I believe a reasonable sentence would have been, obviously, in excess of 30 years but less than 40 years, something that would have given this young man who was just a kid – just a kid in life a chance to, obviously, think about what he has done for a long time, punish him in a way that sends a message to everyone else that if you get caught or you do these things, you are going to sit for a long time and wreck your life but not close off the possibility that he can – he can come back to society someday.

Sent. Tr. 32.

Judge Anderson imposed a "profoundly sad" life sentence on Counts 1, 17 24, 35, 37, and 38 (drug counts).[21] Mr. Lawrence was sentenced to a concurrent term of 48 months imprisonment on Counts 11, 16, 21, 23, 27, and 36 (the phone counts). The Court sentenced Lawrence to a concurrent term of 120 months' imprisonment on Counts 19 and 26 (felon-in-possession counts). On Count 18 (a 924(c) charge), Mr. Lawrence received a consecutive sentence of 60 months' imprisonment. On Count 25 (a second 924(c) charge for vicarious gun possession), Mr. Lawrence received a consecutive, stacked sentence of 300 months imprisonment.

The Seventh Circuit affirmed Lawrence's convictions and sentence in *United States v. Seymour*, 519 F.3d 700 (7th Cir. 2008). The United States Supreme Court denied Mr. Lawrence's petition for writ of certiorari. *Seymour v. United State*, 555 U.S. 993 (Nov. 2, 2008).

## II.    THE LAW

### A.    The Fair Sentencing Act of 2010

Prior to the Fair Sentencing Act of 2010 (FSA), an offense involving 50 grams or more of crack cocaine triggered a 10-year mandatory minimum and a statutory maximum of life imprisonment. An offense involving 5 to 49.9 grams of crack cocaine triggered a 5-year

---

[21]    At his original sentencing, Counts 1, 24, and 38 required a life sentence pursuant to 21 U.S.C. §§ 846, 841(b)(1)(A)(ii) and 841(b)(1)(A)(iii) because: (a) the convictions involved a conspiracy to possess and distribute 5 kilograms or more of a mixture or substance that contained cocaine or 50 grams or more of a mixture or substance that contained crack, and (b) Mr. Lawrence had two prior felony drug offenses. On Count 17 and 35 a life sentence was not required because Count 17 involved 10.9 grams of crack and Count 35 involved 4446 grams of cocaine, bringing them under the purview of 21 U.S.C. §§ 841(b)(1)(B)(ii) or 841(b)(1)(B)(iii). Despite no life sentence being required on Counts 17 and 35, the government sought a life sentence on those counts. *Lawrence*, 02-cr-00200. (Doc. No. 467-2 at 4).

minimum sentence and a statutory maximum of 40 years of imprisonment. *Dorsey v. United States, 567* U.S. 260, 266 (2012).

Section 2 of the FSA amended § 841(b)(1)(A)(iii) by striking "50 grams" and inserting "280 grams" and amended § 841(b)(1)(B)(iii) by striking "5 grams" and inserting "28 grams". Public Law 111-220; 124 Stat. 2372, § 2. Accordingly, post-FSA, it takes 280 grams of crack cocaine to trigger § 841(b)(1)(A)(iii)'s 10-year mandatory minimum and 28 grams to trigger § 841(b)(1)(B)(iii)'s 5-year mandatory minimum. *Dorsey, 567* U.S. at 269. The Supreme Court determined the FSA applied to any defendant who had not been sentenced as of the Act's effective date: August 3, 2010. *Id.* at 281. The FSA did not apply retroactively to defendants sentenced prior to August 3, 2010. *Id.*

## B.    The First Step Act of 2018

The First Step Act ("1SA") of 2018 legislatively authorized district courts to reduce pre-FSA crack penalties retroactively for "covered offense[s]." Specifically, § 404(a) of the First Step Act defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then states: "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court impose a reduced sentence as if sections 2 and 3 of the Fair

Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."[22]

In addition, § 401 of the First Step Act changed the definition of a predicate offense necessary to trigger the enhanced penalties of 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(B) from a prior conviction for a "felony drug offense" to a prior conviction for a "serious drug felony." A "felony drug offense" was defined as an offense with a maximum term of 10 years or more, regardless of the sentence actually imposed, whereas a "serious drug felony" is a "felony drug offense" where the defendant actually served a term of imprisonment of more than 12 months.

## III.   DISCUSSION

In 2003, Troy Lawrence faced a mandatory life sentence pursuant to 21 U.S.C. § 851. If he were standing before Your Honor today for the exact same offense with the exact same criminal history, Lawrence could not face any recidivist enhancement because he does not have any "serious drug felony" convictions to trigger the increased penalties of § 851. We might reasonably agree that is not fair.

Troy Lawrence pursues two avenues for relief under the First Step Act: ***First***, pursuant to Section 404(b), Mr. Lawrence moves the Court to reduce his life sentence to 120 months on Counts 1, 17, 24, 35, 37, and 38. ***Second***, pursuant to 18 U.S.C. Section 3582(c)(as amended

---

[22] There are only two limitations to the Court's ability to impose a reduced sentence. First, the defendant cannot receive a reduced sentence if the sentence was imposed or previously reduced in accordance with the amendment made by sections 2 and 3 of the FSA. Second, if the Court has already rejected a motion filed under § 404 of the Fair Sentencing Act "after a complete review of the motion on the merits" the defendant cannot ask for a second bite at the apple. First Step Act § 404(c). Neither exception applies to Mr. Lawrence's case, as he has never received or been denied a Section 404 reduction.

by § 603 of the 1SA), he moves the Court to reduce his 300-month stacked sentence to 60 months on Count 25 for vicarious gun possession. This Motion will discuss Mr. Lawrence's arguments in turn.

A. **The Crack Counts 1, 17, 24, 38: Defendant Troy Lawrence is Eligible for a Reduced Sentence Pursuant to the Plain Language of Section 404(b) of the First Step Act.**

Mr. Lawrence is eligible for a reduced sentence under § 404 of the First Step Act because his "covered offense" violated a federal criminal statute for which the penalties were reduced by the Fair Sentencing Act. A "covered offense" refers to the statute of conviction, not the defendant's specific conduct. *United States v. Shaw,* 957 F. 3d 734 (7th Cir. Apr. 28, 2020); *see also United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019); *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019); *United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019).

Here, Lawrence's offenses were committed before August 3, 2010. Lawrence and his co-defendants were charged with conspiracy to possess with intent to distribute 50 grams or more of cocaine and cocaine base, a violation of the 2003 version of 21 U.S.C. § 841(b)(1)(A). The Fair Sentencing Act modified the statutory penalties for violations of 21 U.S.C. § 841(b)(1)(A). Therefore, this Court is authorized to impose a reduced sentence under § 404 of the First Step Act.

In fact, Your Honor has already granted First Step Act relief on Count 1 to Lawrence's co-defendants Andre Lawrence (Doc. No. 1875) and Andre Seymour (Doc. No. 1926).

**B.** **Additional Drug Counts 35 and 37: The Court also has the power to reduce Lawrence's life sentence on Counts 35 and 37, which were non-crack counts.**

Troy Lawrence's mandatory life sentence is a relic of old, unfair crack penalties. As discussed above, the First Step Act allows the Court to rectify that. The question then becomes: What can and should the Court do with Lawrence's life sentence on Count 35 (4446 grams of cocaine powder) and his life sentence on Count 37 (496 grams of cocaine powder)? The mandatory nature of Lawrence's life sentence on other charges may have obviated the sentencer's need for protracted discussion or consideration on Counts 35 and 37. Today, the penalties on Counts 35 and 37 can and should also be reduced to achieve a packaged sentence that is "sufficient but not greater than necessary." 18 U.S.C. §3553(a).

In granting Lawrence's First Step Act motion, the Court may discretionarily reduce his life sentences on Count 35 and 37 because the sentencing-package doctrine "permits a court to resentence a defendant on non-vacated counts of conviction in order to effectuate its original sentencing intent after other counts have been vacated." *United States v. Myers*, No. 91 CR 463-5, 1996 WL 718513, at *1 (N.D. Ill. Dec. 3, 1996); *see also Pennsylvania v. Goldhammer*, 474 U.S. 28, 29-30 (1985) (permitting resentencing on non-vacated counts after an appeal where some counts of conviction were affirmed and others vacated); *United States v. Reynolds*, 919 F.2d 435, 439 (7th Cir. 1990) (implementing the "sentencing package" doctrine).

The sentencing-package doctrine recognizes that district judges do not sentence defendants on each count in a vacuum, particularly when multiple counts involve the same or overlapping conduct. Rather, judges consider the total punishment in fashioning an

14

appropriate sentence. *See* U.S.S.G. § 3D1.1 – 3D1.5; U.S.S.G. §§ 5G1.1, 5G1.2 (separate sentence to be imposed on each count, but the aggregate result constitutes "the total sentence").

In the case of *United States v. Medina*, No. 05-cr-058, DE 1466 (D. Conn. July 17, 2019), the district court granted 1SA relief and agreed with the sentencing package argument advanced here. The court reasoned as follows:

> **Nowhere in that mandate does it say that the court may *only* impose a reduced sentence on the covered offense.** A fair reading of the statute requires only that the court, in imposing a reduced sentence, apply sections 2 and 3 as though they were in effect at the time of the covered offense. Congress did not say "impose a reduced sentence *on the covered offense* as if sections 2 and 3 were in effect." It could have done so but did not.

*Id.* (emphasis added).

Once a court concludes that a defendant was convicted of a "covered offense" and is thus eligible to have his sentence reduced, the existence of other non-crack counts does not undermine the eligibility conclusion because the overall sentence is part of a package. There is abundant authority for this proposition. *See e.g. United States v. Williams,* No. CR 3:02-548-03-CMC, 2019 WL 3251520, at *2 (D.S.C. July 19, 2019) ("Essentially, because the court originally fashioned a sentence as a whole for all convictions, his eligibility on Count 1 under the First Step Act means the court has the authority and discretion to unbundle the sentence and re-sentence on all counts."); *United States v. Johnson*, No. 01-CR-543, 2019 WL 2590951 (N.D. Ill. June 24, 2019) (In First Step Act proceedings, the Court reduced defendant's sentence on all three counts—including the count that involved only cocaine—from 360 months' imprisonment to 262 months.); *United States v. Zapata-Vicente*, 01-cr-061, DE 159

(E.D. Va. Aug. 8. 2019) (holding same); *United States v. Biggs*, 2019 WL 2120226, at *1, 3 (N.D. Ill. May 15, 2019) (Holding: where defendant was sentenced to concurrent 360-month terms for a crack offense and a § 922(g)(1) felon-in-possession offense, court reduced both sentences to 180 months; "[a]s with any sentencing, the court considers multiple counts together; indeed, the guidelines require the court to use a combined offense level for all counts"); *United States v. Black*, No. 3:04-cr-100, 2019 WL 2402969 (E.D. Va. June 7, 2019) (reducing Black's sentence on all three of his counts of conviction—(1) possessing cocaine, (2) being a felon who possessed a firearm, and (3) distributing crack—under the First Step Act because his crack count was a covered offense).

### C. Stacked Gun Count 25: This Court should reduce Troy Lawrence's 924(c) stacked, consecutive sentence on Count 25 from 300 months to 60 months.

In Count 25, Mr. Lawrence was charged with vicariously possessing a firearm in relation to his drug offenses. Because the government charged Lawrence with two 924(c) counts, his gun sentences were mandatorily stacked. He received a 60-month sentence on Count 18 (gun count) and a consecutive 300-month sentence on Count 25 (second gun count).

The First Step Act contains an important shift in the 924(c) stacking provision. Prior to the First Step Act, a single § 924(c) count carried a five-year minimum sentence that must be served consecutively. An additional § 924(c) count required a stacked, consecutive 25 years in prison, even though that gun possession occurred during the same course of conduct as the original count. As part of the First Step Act, Congress eliminated the consecutive stacking previously required for violations of § 924(c) and clarified that § 924(c) counts can only be stacked if the second offense occurs after a final conviction on the first offense. § 403(a), 132

Stat. at 5221-22. The First Step Act's 924(c) modifications were not made retroactive. As a result, prisoners like Lawrence are serving lengthy and grossly disproportionate 924(c) sentences that are a function of *when* they were prosecuted (pre-First Step Act) rather than *what* they were prosecuted for.

Mr. Lawrence now asks the Court to reduce his 300-month sentence on Count 25. He pursues two, alternative grounds for relief on Count 25. *First*, if the Court concludes Lawrence has committed a covered crack offense under Section 404(b) of the First Step Act, then the sentencing package doctrine allows this Court to reconsider and reduce his sentence on Count 25 in the context of 404(b) proceedings when fashioning the total sentencing penalty he should face. *See Wright v. United States*, No. 4:95-CR-39, 2019 WL 3046096, at *1-2, 7 (E.D. Va. July 11, 2019) (reducing stacked 924(c) sentence as part of sentencing package in 404(b) First Step Act proceedings). *Alternatively*, Lawrence moves to reduce his 300-month sentence on Count 25 because "[t]he dramatic change to § 924(c) sentences constitutes an extraordinary and compelling reason" for a sentence reduction pursuant to § 3582(c)(1)(A). *United States v. Arey*, No. 5:05-CR-00029, 2020 WL 2464796, at *5 (W.D. Va. May 13, 2020).

These arguments will be addressed in turn.

> **1.    Because Lawrence's crack counts are covered offenses under Section 404(b) of the First Step Act, the sentencing-package doctrine allows the Court to reduce his 300-month sentence on Count 25.**

The sentencing package doctrine allows the Court to reduce Lawrence's 300-month sentence on Count 25. In *Wright v. United States*, the district court first concluded the defendant was eligible for First Step Act relief based on his crack offenses. The district court then followed the sentencing package doctrine to reduce the *Wright* defendant's his sentence on the

stacked § 924(c) counts. 2019 WL 3046096, at *1-2, 7 (E.D. Va. July 11, 2019). As to the stacked gun counts, the court reasoned:

> Since Petitioner Wright is eligible for a new sentence for his drug counts, the Court may impose a new sentence on the gun counts as well . . . . The court therefore finds that the FIRST STEP Act's change to the mandatory minimums of § 924(c) applies to Petitioner Wright's new sentence.

*Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019). Similarly in this case, because the First Step Act authorizes the Court to reduce Lawrence's sentence for his crack cocaine "covered offense" and because his sentence is a total package, the Court may reduce Lawrence's sentence on Count 25 to fashion a total sentence that is sufficient but not greater than necessary.

### 2. Alternatively, the Court should reduce Lawrence's 300-month sentence on Count 25, pursuant to Section § 3582(c)(1)(A), because "extraordinary and compelling" circumstances warrant a reduction.

Section § 3582(c)(1)(A) provides this Court with an alternative statutory avenue to correct Lawrence's disproportionate sentence on his stacked gun counts. Section 603 of the First Step Act amended § 3582(c)(1)(A) to allow a defendant to move a sentencing court for modification of a sentence based on "extraordinary and compelling reasons." First Step Act of 2018, § 603.

Although the First Step Act § 403(a) did not make its remedial anti-stacking provisions retroactive, several district courts have reasoned that "the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason" under § 3582(c)(1)(A). *United States v. Bryant*, No. 95-cr-202, 2020 WL 2085471, at *3 (D. Md. Apr. 30, 2020); *United States*

*v. Redd*, —— F.Supp.3d at ——, 2020 WL 1248493 (E.D. Va. March 16, 2020), at *6; *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *8 (M.D. Tenn. Mar. 4, 2020) ("The court finds that the drastic change effected by the First Step Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)"); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) (finding "that the changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here."); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *15 (E.D.N.Y. Apr. 22, 2020) (finding "that the FSA' elimination of the § 924(c) sentencing weaponry that prosecutors employed to require [a "stacked" § 924(c) sentence] is an extraordinary and compelling circumstance warranting relief under § 3582(c)"); *United States v. Arey,* No. 5:05-CR-00029, 2020 WL 2464796, at *5 (W.D. Va. May 13, 2020) (same).

In addition to the unwarranted disparity between pre-1SA§ 924(c) stacked sentences and post-1SA 924(c) sentences, a number of courts have found the disparity in sentences *plus* the documented rehabilitation efforts of a prisoner sufficient extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). *See e.g. United States v. Chan*, 2020 U.S. Dist. LEXIS 56232, at *15 (N.D. Cal. March 31, 2020) (finding Chan's "rehabilitation efforts in combination with the amendments to [§ 924(c)'s] stacking provisions. . . demonstrate[s] extraordinary and compelling reasons to reduce his sentence"); *United States v. Owens*, 2020 U.S. Dist. LEXIS 61460, at *9 (S.D. Cal. March 20, 2020) (finding "extraordinary and compelling reasons exist for a reduction in Owen's sentenced based on the changes in how § 924(c) sentences are calculated" and "combined with the evidence of Owens' rehabilitation"); *United*

*States v. Wade*, 2020 U.S. Dist. LEXIS 65373, 1 (D.C. Cal. April 13, 2020) (reducing defendant's § 924(c) sentences "based on her exceptional personal growth, and the 'injustice of facing a term of incarceration' several decades 'longer than Congress now deems warranted.'").

Here too, Mr. Lawrence's disproportionate 25-year sentence on Count 25 presents extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A).[23] Because the Court is authorized to reduce Mr. Lawrence's life sentence for his drug offenses and his stacked 30-year sentence for vicariously possessing a firearm during said offense, the next question is *should* the Court reduce Lawrence's total sentence; and if a reduction is warranted, how much?

**D. Troy Lawrence has *earned* a reduced sentence when post-sentencing factual and legal developments and 3553(a) factors are considered.**

**1. The 2018 Guidelines Calculations**

At Lawrence's 2003 sentencing, the PSR concluded "the defendant was personally involved in the packaging of at least 1.5 kilograms of crack cocaine," resulting in a base offense of 38. (PSR at 6, line 173) Lawrence received a two-point enhancement for protected location, four-point leadership enhancement, and two-point obstruction enhancement. Lawrence's total offense level was 46 which, combined with criminal history category VI, resulted in a guideline range of life imprisonment.

---

[23] Mr. Lawrence has properly exhausted all administrative remedies under Section 3582(c)(1)(A). On January 8, 2020, Mr. Lawrence filed a request for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). On January 15, 2020, the Warden denied Mr. Lawrence's request directing Mr. Lawrence to "address this matter with the court for the Northern District of Illinois." See Exhibit D.

Under the current sentencing guidelines, Troy Lawrence's base offense level for 1.5 kilograms of crack is 32. He continues to receive a two-point enhancement for protected location, four-point leadership enhancement, and two-point obstruction enhancement. His criminal history category remains VI, resulting in an advisory guidelines range of 360 months to life. He requests a reduced total sentence of 240 months' incarceration.

### 2.  History of Troy Lawrence

When Troy Lawrence was just 17 years old —a *juvenile* under current Illinois law—he sold/possessed raisin-sized, fractional gram quantities of cocaine.  Lawrence acquired three state convictions for possessing/delivering minimal quantities of cocaine within a three-month time span to Chicago Heights officers who were targeting Lawrence. Two of the convictions were for less than 1 gram of cocaine—analogous to the weight of a raisin. Outside of those three teen convictions, traffic violations are Lawrence's only other infractions. Prior to Lawrence's life sentence, his longest term of imprisonment was 120 days in young offender bootcamp.

Despite such minimal criminal history, the prosecutor maintained Lawrence's chronologically and qualitatively minor drug convictions required him to forfeit his entire life's freedom pursuant to an enhancement under 851, due in part because Lawrence exercised his right to trial. Lawrence fully accepts responsibility and admits that he led a drug conspiracy and vicariously possessed (but did not use) firearms during that conspiracy. The prosecutor contended, Troy Lawrence's prior teenage convictions for cocaine delivery rendered him a serious recidivist. Although Lawrence was a young adult—27 years old—when he committed

his federal drug crime, his juvenile convictions for fractional quantities of cocaine are predicates for his life sentence.

### 2. Current Characteristics and the Rehabilitation of Troy Lawrence



*I'm ready to be a father to my children. I'm ready to take on the responsibility of being there for my mother and making her last days . . . as pleasant and peaceful as possible. I'm ready to be a positive, productive citizen and to lead by example. . . . And I'm ready to fulfill my purpose with a new light that I found through prison.*

–Statement of Troy Lawrence

*He has served a sufficiently long sentence of 14 years … and deserves the chance to reunite with his family.*

–Statement of E.A. Earvin, Associate Warden, USP Florence, CO

Mr. Lawrence requests that the Court listen to his audio recorded statement reflecting on his life sentence and rehabilitation, which is published as part of a national storytelling series *The Third Strike Campaign:* https://www.thirdstrikecampaign.com/home/troy-lawrence

There are three components to a successful release plan. First, a successful reentry must begin with demonstrated rehabilitation. Troy Lawrence did not let his sentence deter him from taking advantage of BOP opportunities to better himself. Six short months after he was

sentenced to life, he received his G.E.D.,[24] and shortly thereafter, he began working as an orderly.[25] In the span of one year, Lawrence completed approximately 500 hours of computer skills training and over 200 hours of additional educational programming.[26] In 2013, Lawrence attained what is perhaps his most notable educational achievement, completing a total of 1,455 hours of vocational training in Business Management.[27] Troy Lawrence has proven that, when given access to positive and productive opportunities, he consistently makes an active choice to better himself and others around him.

As a result, Mr. Lawrence received an unprecedented letter recommending clemency from Associate Warden E.A. Earwin at USP Florence.[28]

MEMORANDUM FOR:  OFFICE OF THE PARDON ATTORNEY

From:  (E.A. Earwin, Associate Warden, USP Florence, Co

SUBJECT:  **Troy Lawrence, Reg. No. 14313-424**

I am writing this letter of recommendation on behalf of Troy Lawrence's Clemency petition. I know Troy to be a mature, middle aged man who has lived according to the institution rules for a long time. Mr. Lawrence is a positive force here at USP Florence, mentoring younger prisoners, and being a model of consistence by receiving his GED, taking college courses, and participating in many vocational programs.

In his recommendation letter, the Warden describes Lawrence as "a positive force . . . mentoring younger prisoners, and being a model of consistency." He states, "I am confident, if granted Clemency, Troy Lawrence would quickly become a productive member of society. He has served a sufficiently long sentence . . . and deserves the chance to reunite with his

---

[24]    BOP Inmate Skills Development Plan & Inmate Data, Exhibit E.
[25]    *Id.*
[26]    *Id.*
[27]    *Id.*
[28]    Letter from Associate Warden E.A. Earwin, Exhibit A. Sadly, Mr. Lawrence was not granted clemency before President Obama left office.

family," thus confirming Lawrence poses no threat to the community or himself.

Second, a successful release plan must include a stable support structure which facilitates community reintegration and employment. In 2016, Troy applied for and was accepted to participate in the CARA Program, a "best-in-class job training and placement provider, for individuals reentering the community."[29] The Cara Program has agreed to provide "comprehensive training, assistance with permanent job placement and critical support services to assist [Mr. Lawrence] in achieving a life of self-sufficiency."[30]



237 south desplaines
chicago, illinois 60661
ph: 312-798-3300
fax: 312-382-0268
www.thecaraprogram.org

September 22, 2016

To whom it may concern:

Please be advised that **Troy Lawrence** has been accepted into Cara and will begin once he has been granted clemency and moves in Salvation Army. He will receive comprehensive training, assistance with permanent job placement and critical supportive services to assist him in achieving a life of self-sufficiency. His schedule is as follows:

Week 1: Mon to Fri, 8:00 a.m. – 5:00 p.m.
Week 2 until employed: Mon to Thurs, 8:00 a.m.-5:00 p.m.

Third, a successful release plan must also include familial and community support. Troy Lawrence is the father of five children and maintains involvement in their lives. Mr. Lawrence also maintains a very close relationship with his mother Farra Lawrence who is now retired after working for almost 30 years in a pharmaceutical factory. He looks forward to

---

[29]     The Cara Program, *available at* http://www.thecaraprogram.org/about/mission-and-philosphy (last accessed Oct. 6, 2016). A full description of the Cara Program is available at http://www.thecaraprogram.org/.

[30]     Cara Acceptance Letter, Exhibit F.

reconnecting with his family. "[P]rison was the . . . thing to get me on the proper path, and it's time to give back what [has] been given to me."[31]



### 3.    Need to Avoid Unwarranted Disparities

The remedial purpose of the Fair Sentencing Act of 2010 is to address sentence disparities. When looking at Lawrence's co-defendants sentences and officers from Chicago Heights Police Department, Troy Lawrence's life sentence is grossly disproportionate. Among the twenty-five individuals charged with being involved in the narcotic conspiracy, Lawrence was the only one who received a life sentence and he is the only co-defendant who remains incarcerated. In fact, this Court already granted First Step Act relief to Lawrence's co-defendants Andre Lawrence, Andre Seymour and Kent Clark. *See United States v. Andre Lawrence*, 02 CR 200-22, Doc. No. 1877 (order granting reduction in sentence to time served under Section 404 of First Step Act); *United States v. Kent Clark*, 02 CR 200-11, Doc. No. 1892 (order granting relief under First Step Act).

---

[31]    Recorded statement of Troy Lawrence, available here: https://www.thirdstrikecampaign.com/home/troy-lawrence (last accessed March 31, 2020)

## V.    CONCLUSION

Troy Lawrence's mandatory life sentence is not the handiwork of a federal judge. He is not serving a mandatory life sentence because a judge found him to be a violent person, a drug recidivist, or an irredeemable societal toxin. No federal judge's appraisal of him ever factored into his permanent banishment. It is simply the coincidence of time – and not the severity of his crime – that now buttresses Lawrence's life sentence.  Yet, that fact alone is not the most troubling factor in favor of a reduced sentence. When Troy Lawrence was just 17 years old — a *juvenile* — he sold/possessed raisin-sized, fractional gram quantities of cocaine. Later in his federal drug case, the prosecutor maintained Lawrence's chronologically and qualitatively minor drug convictions required his life sentence. Judge Andersen reluctantly rubberstamped the life penalty, but only after calling it "a profoundly sad thing."

Mr. Lawrence fully accepts responsibility and admits that he led a drug conspiracy and vicariously possessed firearms during that conspiracy. He asks the Court to look to his earnest record of rehabilitation as well. Even with no certainty that he would ever be released, Lawrence has spent the last 18 years making something of his life.

WHEREFORE the First Step Act grants the district court authority to reduce sentences imposed under the excessively-harsh penalty structure that Congress has now renounced. Defendant Troy Lawrence is eligible for a sentence reduction under Sections 404(b) and 603 of the First Step Act. He has certainly earned such a reduction and respectfully asks that this Court reduce his total term of imprisonment to 240 months as follows:

A.    Reduce his life sentence to 120 months on Counts 1, 17, 24, 35, 37 and 38, such sentences to run concurrent to each other and to run consecutive to Counts 25 and 18; and

B.      Reduce his 300-month sentence on Count 25 to 60 months, such sentence to run consecutive to all other counts.

C.      Mr. Lawrence understands that his 60-month sentence on Count 18 shall remain intact and shall run consecutive to all other counts.

Respectfully submitted,

/s/ MiAngel Cody
MIANGEL CODY

/s/ Talisha Griffin
TALISHA GRIFFEN

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Troy Lawrence*

## **CERTIFICATE OF SERVICE**

The undersigned, MiAngel Cody, an attorney with The Decarceration Collective Law Office, hereby certifies that on May 27, 2020, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**DEFENDANT TROY LAWRENCE'S MOTION
TO REDUCE HIS LIFE SENTENCE**

/s/ MiAngel Cody
MIANGEL CODY

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Troy Lawrence*
